IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-1529

ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK, and
AMERICAN IMMIGRATION COUNCIL

    Plaintiffs,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, and
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

    Defendants.

---

**COMPLAINT FOR INJUNCTIVE RELIEF**

---

**INTRODUCTION**

1.     This action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeks to compel Defendants U.S. Department of Homeland Security ("DHS") and its subcomponent Immigration and Customs Enforcement ("ICE") to disclose records about ICE's practice of transferring individuals in the agency's custody from one detention facility to another.

2.     On January 4, 2012, ICE implemented Policy 11022.1 (referred to hereinafter as "the 2012 Policy") adopting procedures the agency must follow when it transfers individuals in its custody from one detention facility to another.

3.     ICE frequently moves individuals in its custody from one of ICE's geographic Areas of Responsibility ("AOR") to another without following the guidelines established by the Policy.

1

4.      Plaintiffs Rocky Mountain Immigrant Advocacy Network ("RMIAN") and American Immigration Council ("Council") filed a request for records pursuant to FOIA on February 7, 2025, to inform the public, as well as directly impacted individuals and their attorneys, about ICE's procedures during transfers.

5.      To date, Defendants have not responded to Plaintiffs' records request, and Plaintiffs now bring this FOIA action for injunctive and other appropriate relief.

## JURISDICTION AND VENUE

6.      This court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C § 1331 since this action arises under FOIA against an agency of the United States.

7.      Under 5 U.S.C § 552(a)(4)(B), the U.S. District Court of Colorado is the proper venue because Plaintiff RMIAN's principal place of business is in this district.

## PARTIES

8.      Plaintiff RMIAN is a nonprofit organization and legal service provider in Colorado. It serves noncitizens in detention at the Aurora Contract Detention Facility ("Aurora Facility"), which as of February 3, 2025, had a population of 1,116. In fiscal year 2023, RMIAN provided 206 group Know-Your-Rights presentations to 3,011 people at the Aurora Facility and 928 individual intakes to people who lacked legal counsel. RMIAN also serves non-detained noncitizens with pending cases before the Denver Immigration Court where it provided 320 group "Know-Your-Rights" presentations to 5,132 people and 455 individual intakes in fiscal year 2023. RMIAN promotes knowledge of legal rights, provides zealous pro bono immigration legal representation to uphold fundamental fairness and due process, elevates the importance of universal representation where anyone in immigration proceedings has access to counsel despite

2

financial barriers, and advocates for a more efficient, functional, and humane immigration system.

9. Plaintiff Council is a tax-exempt, not-for-profit education and charitable organization under Section 501(c)(3) of the Internal Revenue Code. The Council strives to strengthen the United States by shaping immigration policies and practices through innovative programs, cutting-edge research, and strategic legal and advocacy efforts grounded in evidence, compassion, justice, and fairness.

10. Defendant DHS is an agency of the United States government and an agency within the meaning of 5 U.S.C. § 552(f)(1). DHS is responsible for the enforcement of immigration law in the United States. DHS is comprised of a number of subcomponents and offices, including ICE.

11. Defendant ICE is a subcomponent of DHS and an agency within the meaning of 5 U.S.C. § 552(f)(1). ICE, and its Enforcement and Removals Operations, oversees civil immigration detention in the United States. Under the 2012 Policy, ICE established responsibilities and procedures for ICE employees who perform "detainee transfers."

## STATEMENT OF FACTS

### I. ICE Policies for Transferring People in Detention

12. On January 4, 2012, Defendant ICE promulgated the 2012 Policy, which regulates "how field offices make detainee transfer determinations and conduct[] transfers out of the Area of Responsibility (AOR)."

13. The 2012 Policy contains instructions on topics such as: instances when ICE Supervisory Immigration Officers "will not" transfer individuals in detention and when Field Office Directors (FOD) may deem transfers necessary; forms that ICE officers complete when

3

executing transfers; documents and other information that field offices sending individuals to the receiving field offices must transmit when executing transfers; the transfer of individuals' property; post-transfer activities; and data-keeping duties for quality assurance purposes.

14.     ICE also derives guidance for transferring individuals in its custody from the several detention standards adopted by ICE such as the National Detention Standards ("NDS"), which apply to detention facilities not exclusively used for immigration detention, and the Performance-Based National Detention Standards ("PBNDS"), which apply to facilities that only hold individuals in ICE custody.

15.     The 2019 NDS Standard 7.2 prescribes "procedures and notification requirements to be followed when transferring a detainee." Immigration and Customs Enforcement, National Detention Standards § 7.2, 198 (revised 2019) *available at* https://www.ice.gov/doclib/detention-standards/2019/7_2.pdf.

16.     The 2011 PBNDS, revised in December 2016, contains Standard 7.4 that sets certain requirements ICE officers must follow when transferring individuals in ICE custody. Immigration and Customs Enforcement, Performance-Based National Detention Standards § 7.4, 457 (revised Dec. 2016) *available at* https://www.ice.gov/doclib/detention-standards/2011/7-4.pdf. Standard 7.4 states that it replaces the "Transfer of Detainees" dated 12-2-2008 and makes no mention of the 2012 Policy. *Id.*

17.     The Aurora Facility, as a facility that exclusively holds individuals in immigration custody, is bound by the standards established by the 2011 PBNDS, revised in 2016. Office of the Inspector General, U.S. Department of Homeland Security, Concerns about ICE Detainee Treatment and Care at Four Detention Facilities 2 (June 3, 2019) *available at* https://www.oig.dhs.gov/sites/default/files/assets/2019-06/OIG-19-47-Jun19.pdf.

**II.     ICE Transfers**

18.    ICE frequently transfers individuals from one AOR to another.

19.    Upon information and belief, ICE transferred people in its custody who had attorneys in the AOR where they were detained, and the agency failed to notify attorneys of their clients' transfers.

20.    RMIAN regularly observes transfers of people in ICE custody being moved in and out of the Aurora Facility. For example, in 2024, RMIAN represented a transgender woman who was originally detained in Bowling Green, Virginia. ICE transferred her to the Aurora Facility in March 2023. After she attempted suicide, ICE transferred her to a facility in El Paso, Texas at the end of December 2023. After about a month, ICE transferred her back to the Aurora Facility. In May 2024, while RMIAN was counsel of record and without prior notice, ICE initiated her transfer back to El Paso before ultimately moving the client to Miami, Florida where she was again moved between two different facilities. The client ultimately prevailed on her fear-based claim. ICE released her from its custody after transferring her at least six times between various detention facilities.

21.    ICE recently transferred Mr. Mahmoud Khalil, a Palestinian student at Columbia University arrested by ICE in New York, to a detention facility in Louisiana despite having a U.S. citizen wife residing in the New York AOR.

22.    Under the 2012 Policy, Mr. Khalil's spouse is an "immediate family" member and his transfer out of the AOR is prohibited unless the transfer is deemed necessary by a FOD or his or her designee.

23. On April 22, 2025, members of Congress sent a letter to Defendants demanding information about why ICE transferred certain individuals in its custody from northeast states to detention centers in Louisiana.

### III.  Plaintiffs' FOIA Request

24. On February 7, 2025, Plaintiffs filed a FOIA request with Defendant ICE for certain records about ICE transfers in order to obtain information about the agency's current procedures when transferring individuals in ICE custody and inform the public about whether Defendants follow their own standards for such transfers.

25. The request sought: a) documents of agency guidance updating the 2012 Policy; b) statistics that the 2012 Policy required FODs to compile; c) blank copies of forms required to be completed by ICE under the 2012 Policy; and d) records maintained during calendar year 2024 on ICE transfers by the ICE Field Offices in Atlanta, Denver, New York, and San Diego. A true and complete copy of Plaintiffs' FOIA request is attached and marked as *Exhibit A*.

26. Defendant ICE acknowledged receipt of Plaintiffs' FOIA request on February 7, 2021, via e-mail sent to the Council on February 21, 2025.

27. The February 21 email informed Plaintiffs that the agency assigned the request Case No. 2025-ICFO-18612.

28. In its acknowledgement, ICE invoked FOIA's ten-business day extension of the law's requirement that the agency respond to a request within twenty business days. *See* 5 U.S.C. § 552(a)(6).

29. Under the statute, Defendants' deadline to respond to Plaintiffs' request was March 24, 2025.

30. As of May 14, 2025, Defendant ICE's electronic FOIA portal shows that the agency is "Searching for Records."

31. As of the date of this filing, Defendant ICE has not made a determination regarding Plaintiffs' FOIA request.

### IV. Plaintiffs' Request for Expedited Processing

32. Plaintiffs filed a request for expedited processing on April 21, 2025. Plaintiffs cited more than fifty media articles discussing ICE transfers since the date Plaintiffs filed their request, highlighting the extensive media interest in the subject, as well as the Council's track record in disseminating information to the public. Plaintiffs also detailed the urgency to inform the public about ICE's implementation, and compliance with, its own policy on individuals' transfers. A true and complete copy of Plaintiffs' request for expedited processing is attached and marked as *Exhibit B*.

33. Pursuant to 6 C.F.R. § 5.5(e)(2), Plaintiffs sent the expedited processing request to ICE and to DHS.

34. Both ICE and DHS received the expedited processing request on April 28, 2025.

35. On April 29, 2025, Defendant ICE denied Plaintiffs' request for expedited processing.

36. As of this filing, Defendant DHS has not responded to Plaintiffs' request for expedited processing.

## CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF: FAILURE TO CONDUCT A REASONABLE SEARCH**

37. Plaintiffs hereby incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1-36 above.

38.     Plaintiffs have a legal right under FOIA for Defendant ICE to conduct a reasonable search for records responsive to Plaintiffs' FOIA Request. 5 U.S.C. § 552(a)(3)(C).

39.     Defendant ICE has not conducted a reasonable search for records responsive to Plaintiffs' request.

40.     Defendant ICE's failure to conduct a reasonable search for these records violates FOIA. *Id.*

### SECOND CLAIM FOR RELIEF: FAILURE TO MAKE RESPONSIVE RECORDS PROMPTLY AVAILABLE

41.     Plaintiffs hereby incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1-36 above.

42.     Plaintiffs have a legal right under FOIA to promptly obtain the records sought in the February 7, 2025, FOIA request. *Id.* § 552(a)(3)(A).

43.     As of the date of this filing, Defendants have not made any records responsive to Plaintiffs' February 7, 2025, FOIA request available.

44.     Defendants' failure to make these records available to Plaintiffs to date has no legal basis and violates FOIA. *Id.*

### THIRD CLAIM FOR RELIEF: FAILURE TO GRANT REQUEST FOR EXPEDITED PROCESSING

45.     Plaintiffs hereby incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1-36 above.

46.     Plaintiffs are entitled to expedited processing because Plaintiffs' request for expedited processing demonstrated an urgency to inform the public about an actual government activity and the Council is primarily engaged in disseminating information. 5 U.S.C. § 552(a)(6)(E)(i)(I), (iii); *see also* 6 C.F.R. § 5.5(e)(1)(ii).

47.     Plaintiffs are also entitled to expedited processing because Plaintiffs' FOIA request concerns a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence. *See* 6 C.F.R. § 5.5(e)(1)(iv).

48.     Defendants' failure to grant Plaintiffs' request for expedited processing violates the FOIA and its implementing regulations. 5 U.S.C. § 552(a)(6)(E)(iii).

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request that this Court grant the following relief:

a. Assume jurisdiction over the matter;

b. Grant Plaintiffs expedited processing on Plaintiffs' February 7, 2025, FOIA request.

c. Order Defendants to process Plaintiffs' February 7, 2025, FOIA request as soon as practicable.

d. Order Defendant ICE to conduct a reasonable search for all records responsive to Plaintiffs' February 7, 2025, FOIA request pursuant to 5 U.S.C. § 552(a)(3);

e. Order Defendants to make a determination on Plaintiffs' February 7, 2025, request within twenty days;

f. Order Defendants to process and disclose responsive non-exempt records in their entirety and make them promptly available to Plaintiffs;

g. Review any and all of Defendants' decisions to redact or withhold information in responsive records as exempt from disclosure;

h. Award Plaintiffs' costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

i. Grant other such relief as the Court may deem just and proper.

Date: May 14, 2025				Respectfully submitted,


						/s/ Laura Lunn
						Laura Lunn (OR Bar No. 141480)
						Rocky Mountain Immigrant Advocacy Network
						7301 Federal Blvd., Ste. 300
						Westminster, CO 80030
						(720) 370-9100 | llunn@rmian.org

						Raul A. Pinto (DC Bar No. 90013180)
						American Immigration Council
						PMB2026
						2001 L Street N.W., Suite 500
						Washington, DC 20036
						(202) 507-7549 | rpinto@immcouncil.org